IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE

Civil Case No.: 16-cv-02855-LTB

ARCHIE HINES,

        Plaintiff,

v.

NANCY A. BERRYHILL, Acting Commissioner of Social Security,

        Defendant.

___

ORDER
___

      Plaintiff Archie Hines appeals the final decision of the Acting Commissioner of Social Security ("SSA") denying his application for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401–34, 1381–85. I have considered the parties' briefs (ECF Nos. 22–24) and the administrative record (ECF No. 18) ("AR"). Oral argument would not materially assist me in determining this appeal.

      Mr. Hines argues the administrative law judge (ALJ) erred by inadequately developing the record, failing to correctly assess all of his medical impairments, improperly weighing his subjective complaints, and wrongly determining he has past relevant work as a customer service representative. Because I agree the ALJ should have obtained and considered medical records from when Mr. Hines was in the custody of the Colorado Department of Corrections, I do not reach Mr. Hines's other arguments. I accordingly REVERSE the SSA's decision and REMAND this

case for proceedings consistent with this opinion.

## I. Background

### A. Procedural History

Mr. Hines received disability insurance benefits and supplemental social security income from July 1993 until April 2006 based on a spine injury he sustained in a bus accident. AR 248, 262. After a continuing disability review in 2007, SSA found that Mr. Hines had medically improved and ended his benefits. AR 103.

In December 2011, Mr. Hines filed a new application for disability insurance benefits and supplemental social security income with SSA, alleging disability beginning December 1, 2009. AR 233–45. After SSA initially denied his claim, AR 127–32, Mr. Hines requested a hearing before an ALJ, AR 133–37. The hearing took place on July 9, 2013. AR 62–81. On August 12, 2013, the ALJ denied Mr. Hines's claim, concluding he was not disabled within the meaning of the Social Security Act. AR 104–23. Mr. Hines asked SSA's Appeals Council to review the ALJ's decision. AR 208. On September 29, 2014, the Appeals Council remanded the case to the ALJ because the ALJ's decision was based in part on earnings records that were not Mr. Hines's. AR 124–26.

On February 27, 2015, the ALJ held another hearing. AR 39–61. On June 16, 2015, the ALJ again denied Mr. Hines's claim. AR 16–38. Mr. Hines again asked SSA's Appeals Council to review the ALJ's decision. AR 13. On August 25, 2016, the Appeals Council denied review, AR 5–10, making the ALJ's decision the

2

final decision of SSA, *see Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003). On November 22, 2016, Mr. Hines timely filed this appeal. (ECF No. 1.) I have jurisdiction pursuant to 42 U.S.C. § 405(g).

B. Facts

Mr. Hines represented himself throughout the administrative proceedings. He claimed he was disabled beginning on December 1, 2009, based on the same 1993 cervical spine injury that formed the basis of his prior disability award (from July 1993 until March 2006). He was injured when the bus he was riding was in an accident and he was thrown from his seat, hitting his back. AR 411. After his prior disability award ended, Mr. Hines became homeless. AR 234. However, Mr. Hines continued to receive some medical treatment for his spinal injury.

In March 2009, Mr. Hines saw Dr. Mark McLean and complained of chronic pain in his joints, back, and neck. AR 370. Dr. McLean diagnosed him with torticollis (a condition in which the neck muscles contract, causing the head to twist to one side) and noted his history of chronic back pain. AR 371. In September 2009, Mr. Hines saw Jaime Lynne Vader, a physician's assistant, and complained he could barely turn his head and suffered from chronic neck and back pain. AR 365. Ms. Vader observed that Mr. Hines had significantly decreased range of motion in his neck, decreased strength in his shoulders, "tight spasmed muscles in neck and back," and could not lift his arms above 80 degrees. AR 366. Ms. Vader conducted a "disability examination" and concluded that Mr. Hines "would definitely need employment with significant modifications but could possibly work a few hours from

3

home." AR 366. Ms. Vader prescribed Flexeril for Mr. Hines's back pain. *Id.*

Mr. Hines returned to Ms. Vader in March and April 2010, still complaining of back and neck pain, which he described as "always a 10." AR 358–64. He told Ms. Vader that using marijuana helps his pain. AR 359. Ms. Vader prescribed him Tylenol with codeine for the pain. AR 363. She also completed a "Med 9" form (a form used by the State of Colorado to determine whether someone is disabled and eligible for benefits). AR 360.

The next medical record from Ms. Vader is almost two years later, in January 2012, because Mr. Hines had been in custody for a parole violation. AR 390. At that visit, Ms. Vader noted that Mr. Hines received medical care in prison, continuing to take his medications for his spinal injury and high blood pressure. *Id.* Ms. Vader explained that their long-term goal was to get his pain to a 4/10, not to eliminate it completely. AR 355. Following this initial visit to reestablish care after he was released, Mr. Hines continued to regularly see Ms. Vader for treatment. *E.g.*, AR 397 (July 2013 letter concluding that Mr. Hines's chronic neck and back pain and degenerative disc disease "interferes with his ability to get up and be active and work" that the condition was "chronic and not expected to get better"); AR 535–36 (March 2014 visit and refill on pain medication); AR 506 (December 2014 visit adjusting pain medication) AR 540 (August 2014 record adjusting pain medications); AR 505 (December 2014 record where Mr. Hines reported increased pain to his right lower back and pain radiating down his right leg); AR 501 (February 2015 visit where Ms. Vader prescribed the maximum dose of gabapentin,

4

and documented his other current medications, including a lidocaine patch (to treat pain) and tiasanidine (a muscle relaxer)).

In 2012, as part of the administrative proceedings, two physicians opined on Mr. Hines's impairments. Dr. Linda Mitchell performed a consultative examination. AR 373–77. Dr. Mitchell concluded that Mr. Hines could stand or walk for about four hours in an eight hour workday, with positional changes every 30 minutes, and that he should avoid squatting, crouching, or kneeling, AR 377, which would restrict Mr. Hines to sedentary work. She also concluded he could frequently lift 20 pounds and occasionally lift 50. *Id.* Dr. Mitchell also observed that Mr. Hines exhibited more mobility on casual examination than direct observation. AR 375. A state agency physician reviewed Dr. Mitchell's opinion and some medical records and partially disagreed with Dr. Mitchell's assessment, concluding that Mr. Hines could perform light work as well as sedentary work. AR 88–91.

The record also contains imaging of Mr. Hines's spine. A March 2013 X-ray of his lumbar spine was essentially normal, but the parts of the lower thoracic spine visible in the X-ray showed early degenerative changes. AR 395. An X-ray of his cervical spine showed "extensive disc space narrowing at C5–6 and C6–7 with prominent anterior and smaller posterior osteophytes" and "advanced degenerative changes" at those levels as well as "posterior disc space narrowing at C4–5." AR 396. A March 2014 MRI showed "C6–7 degenerative disc disease" with "severe left and moderate right C6–7 foraminal stenosis" and "moderate to severe left and

5

moderate right C7–7T foraminal stenosis." AR 398.

## II. Legal Standards

### A. SSA's Five–Step Process for Determining Whether a Claimant Is "Disabled"

A claimant is "disabled" under Title II of the Social Security Act if he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). SSA has established a five-step sequential evaluation process for determining whether a claimant is disabled and thus entitled to benefits. 20 C.F.R. § 404.1520.

At step one, SSA asks whether the claimant is presently engaged in "substantial gainful activity." If he is, benefits are denied and the inquiry stops. § 404.1520(b). At step two, SSA asks whether the claimant has a "severe impairment"—that is, an impairment or combination of impairments that "significantly limits [his] physical or mental ability to do basic work activities." § 404.1520(c). If he does not, benefits are denied and the inquiry stops. If he does, SSA moves on to step three, where it determines whether the claimant's impairment(s) "meet or equal" one of the "listed impairments"—impairments so severe that SSA has determined that a claimant who has them is conclusively disabled without regard to the claimant's age, education, or work experience. § 404.1520(d). If not, SSA goes to step four. At step four, SSA determines the

claimant's residual functional capacity ("RFC")—that is, what he is still able to do despite his impairments, and asks whether the claimant can do any of his "past relevant work" given that RFC. § 404.1520(e). If not, SSA goes to the fifth and final step, where it has the burden of showing that the claimant's RFC allows him to do other work in the national economy in view of his age, education, and work experience. § 404.1520(g). At this step, SSA's "grid rules" may mandate a finding of disabled or not disabled without further analysis based on the claimant's age, education, and work experience. 20 C.F.R. Pt. 404, Subpt. P, App. 2. In contrast with step five, the claimant has "the burden of establishing a prima facie case of disability at steps one through four." *Doyal*, 331 F.3d at 760.

B. Standard for Reviewing SSA's Decision

My review is limited to determining whether SSA applied the correct legal standards and whether its decision is supported by substantial evidence in the record. *Williamson v. Barnhart*, 350 F.3d 1097, 1098 (10th Cir. 2003). With regard to the law, reversal may be appropriate when SSA either applies an incorrect legal standard or fails to demonstrate reliance on the correct legal standards. *See Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996). With regard to the evidence, I must "determine whether the findings of fact . . . are based upon substantial evidence, and inferences reasonably drawn therefrom. If they are so supported, they are conclusive upon the reviewing court and may not be disturbed." *Trujillo v. Richardson*, 429 F.2d 1149, 1150 (10th Cir. 1970). "Substantial evidence is more than a scintilla, but less than a preponderance; it is such evidence that a

7

reasonable mind might accept to support the conclusion." *Campbell v. Bowen*, 822 F.2d 1518, 1521 (10th Cir. 1987) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence. *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). I may not reweigh the evidence or substitute my judgment for that of the ALJ. *Casias v. Secretary of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991).

## III. The ALJ's Decision

The ALJ followed the five-step analysis outlined above. At step one, the ALJ found that Mr. Hines had not engaged in substantial gainful activity from his alleged onset date of December 1, 2009, and met the insured requirements of the Social Security Act through September 30, 2013. AR 21. At step two, the ALJ found Mr. Hines had several severe impairments: obesity, cervical torticollis/dystonia, and mild degenerative lumbar disc disease. AR 22. At step three, the ALJ concluded that Mr. Hines's impairments did not meet or equal any of the "listed impairments" that mandate a conclusive finding of disability under the social security regulations. AR 22–23. At step four, the ALJ found that Mr. Hines had the following RFC:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) as he can lift, carry, push and pull 20 pounds occasionally and 10 pounds frequently and sit 6 hours and stand/walk 6 hours in an 8-hour workday. He cannot reach overhead. He can occasionally stoop, crouch, and climb ramps and stairs. He cannot kneel, crawl, climb ladder and scaffolds, or work at unprotected heights or

8

> with dangerous unprotected machinery and vibrating tools.

AR 23. The ALJ determined that Mr. Hines could return to his past relevant work as a customer service representative and, in the alternative, that other jobs exist in the national economy that Mr. Hines could perform, including a fast food worker, a ticket taker, and warehouse support. AR 29–31. The ALJ accordingly concluded that Mr. Hines was not disabled under the Social Security Act. AR 31.

## IV. Analysis

Mr. Hines argues the ALJ erred because she failed to request his medical records from the Colorado Department of Corrections even though she knew he had spent time in custody and received medical treatment while there.

The burden of proving disability is on a claimant. *Branum v. Barnhart*, 385 F.3d 1268, 1271 (10th Cir. 2004) (citing *Bowen*, 482 U.S. at 146). However, a social security disability hearing is nonadversarial, and "the ALJ bears responsibility for ensuring that 'an adequate record is developed during the disability hearing consistent with the issues raised.'" *Id.* (quoting *Henrie v. U.S. Dep't of Health & Human Servs.*, 13 F.3d 359, 360–61 (10th Cir. 1993). "As a result, an ALJ has the duty to develop the record by obtaining pertinent, available medical records which come to [her] attention during the course of the hearing." *Id.* (quotation omitted). The ALJ's duty is heightened when, as here, the claimant appears before the ALJ without counsel. *Madrid v. Barnhart*, 447 F.3d 788, 790 (10th Cir. 2006).

The evidence before the ALJ indicated that Mr. Hines received medical treatment while he was incarcerated in 2012. Ms. Vader's records showed that Mr.

9

Hines was prescribed several medications while in prison, including gabapentin and Flexeril, both of which are for his spinal impairment. AR 390. Despite this information, the ALJ did not obtain any medical records from the Colorado Department of Corrections. In her decision, the ALJ explicitly relied on a lack of medical records from this period to discount Mr. Hines's subjective complaints and support her RFC determination:

> The claimant submitted 39 pages of medical records covering March 16, 2009 through his hearing of July 9, 2013, a time period of nearly 4.5 years. The lack of treatment suggests that his condition improved enough to be at a bearable level, and therefore, not truly as severe or debilitating as he reported, or his condition was not severe enough to motivate him to seek medical treatment.

AR 25.

The Commissioner defends the ALJ's failure to obtain these records by pointing out that the ALJ obtained other records. While the ALJ did obtain several records identified by Mr. Hines, she was required to obtain all "pertinent, available medical records which c[ame] to [her] attention during the course of the hearing." *Branum*, 385 F.3d at 1271; *see also Carter v. Chater*, 73 F.3d 1019, 1022 (10th Cir. 1996) (holding ALJ failed to adequately develop record where ALJ knew of records from mental health provider but failed to obtain them). The records before the ALJ made it clear that Mr. Hines received treatment for his spinal impairment while in prison, which triggered her duty to obtain those records.

Nevertheless, the Commissioner argues that the ALJ did not need to obtain the prison records because Mr. Hines did not specifically ask her to obtain them. Had Mr. Hines been represented by counsel, I would perhaps agree. But Mr. Hines

10

was pro se, and the ALJ had a heightened duty to develop the record by obtaining not just the records Mr. Hines identified, but also those she knew about. *See Madrid*, 447 F.3d at 791 (explaining that ALJ's failure to obtain medical test results was "especially troubling because [the claimant] was not represented by counsel at his . . . hearing, the test results were in existence at the time of the hearing and apparently available, and the ALJ was aware the test was performed"); *Baker v. Bowen*, 886 F.2d 289, 291 (10th Cir. 1989) (holding ALJ failed to fully and fairly develop the record because the AL failed to obtain records from pro se claimant's treating physician). The ALJ is certainly not required to divine every potential source of Mr. Hines's medical records and request them, but she is required to obtain the pertinent records she knows about. Here, that includes Mr. Hines's medical records from the Colorado Department of Corrections.

Finally, the Commissioner also argues that because Mr. Hines is now represented by counsel, he should have obtained the Colorado Department of Corrections records and presented them to this Court. This argument makes little sense since, as the Commissioner acknowledges, my review is limited to the administrative record. *See, e.g., O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir. 1994).

I accordingly conclude that the ALJ erred when she failed to obtain Mr. Hines's medical records from the Colorado Department of Corrections. Because these records may impact the ALJ's analysis in other areas, I decline to reach any of Mr. Hines's other arguments. On remand, the ALJ should obtain and review the

11

records from the Colorado Department of Corrections and incorporate them into her analysis.

## V. Conclusion

For the above reasons, the SSA's decision is REVERSED, and this case is REMANDED for proceedings consistent with this opinion.

Dated: January  5 , 2018, in Denver, Colorado.

BY THE COURT:

s/Lewis T. Babcock
LEWIS T. BABCOCK, JUDGE